IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-31103
Summary Calendar
_____


CANTERBURY JOINT VENTURE,

                                        Plaintiff-Appellant,

        versus


THE PRUDENTIAL INSURANCE COMPANY
OF AMERICA; BHNO PARTNERS LIMITED,

                                        Defendants-Appellees.


_____

Appeal from the United States District Court for the
Eastern District of Louisiana
(95-CV-2135-A)
_____

September 27, 1996
Before GARWOOD, WIENER and PARKER, Circuit Judges.[*]

GARWOOD, Circuit Judge:

    Appellant Canterbury Joint Venture (Canterbury) appeals the
district court's dismissal pursuant to Federal Rule of Civil
Procedure 12(b)(6) for failure to state a claim upon which relief
can be granted.  We affirm.

**Facts and Proceedings Below**

_____

[*]    Pursuant to Local Rule 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in Local Rule 47.5.4.

This appeal presents a narrow question of Louisiana law which may be stated as whether the payee's transfer to a third party of a defaulted and admittedly owing promissory note constitutes the sale of a litigious right, and therefore triggers the maker's right of redemption.

In December 1970, Canterbury signed a promissory note in favor of appellee Prudential Insurance Company of America (Prudential) secured by a mortgage on a commercial property located at 1010 Common Street in New Orleans, Louisiana. Canterbury concedes that it defaulted on the note on December 31, 1993, with a balance of approximately $8 million owing. On April 24, 1994, Prudential filed an executory proceeding to foreclose on the mortgage. However, Prudential and Canterbury entered into a forbearance agreement in July 1994 that allowed Canterbury until January 1, 1995, to pay the balance owing on the note. In consideration for this agreement, Canterbury agreed to pay Prudential $70,110.75 and waive all defenses to enforcement of the note as well as foregoing its right to seek bankruptcy protection. Canterbury failed to pay the remaining balance by the agreed upon date, yet offered to purchase the note from Prudential for $4 million on February 17, 1995. Prudential made a counteroffer to sell the note to Canterbury for $5.5 million to which Canterbury did not respond. Canterbury alleges that it notified Prudential on March 6, 1995, of its intent to exercise its right of redemption should Prudential assign the note to a third party.

2

On April 11, 1995, Prudential assigned the note to appellant BHNO Partners, Ltd. (BHNO). Canterbury alleges that Prudential and BHNO entered into a confidentiality agreement to prevent the disclosure of the price paid for the assignment to Canterbury. BHNO was substituted for Prudential as plaintiff in the executory proceeding on April 11, 1995, and on April 27, 1995, caused the property to be readvertised for sheriff's sale on June 29, 1995. At the June 29, 1995, sheriff's sale BHNO purchased the property.

On July 3, 1995, Canterbury filed the instant complaint in the United States District Court for the Eastern District of Louisiana alleging that Prudential and BHNO had: (1) conspired to deprive Canterbury of its right to redeem a litigious right, (2) intentionally deprived Canterbury of its right of redemption, and (3) breached an unspecified "special duty" to disclose to Canterbury the amount which BHNO had paid for the assignment. Prudential and BHNO moved to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). By order entered September 18, 1995, the district court dismissed Canterbury's claims with prejudice. A Rule 58 judgment dismissing the suit with prejudice was subsequently entered on September 20.

The district court reasoned that all of Canterbury's claims were premised upon the existence of a litigious right, yet no such right existed as the facts pleaded by Canterbury demonstrated that Canterbury had failed to contest the executory proceeding, and had in fact waived all defenses to such proceeding. The district court

3

noted that it is necessary that the suit be contested for any litigious right to arise under Louisiana law. The court below additionally held that even if a litigious right were found to exist, Canterbury had waived its right of redemption by failing to assert it in a timely manner. The court additionally observed that the twin policies of preventing speculation in litigation and putting an end to litigation that underlie the right of redemption where a litigious right is sold would not be served under the facts of the present case. Finally, the court held that Canterbury's conspiracy claim under Louisiana Civil Code Article 2324 could not succeed because such a claim must be premised upon the commission of some underlying tort under Louisiana law, and no such tort could be pleaded in this case as no litigious right existed, and that the absence of any such litigious right was similarly fatal to Canterbury's claim that some special duty was owed by the defendants.

On October 2, 1995, Canterbury filed a motion for reconsideration followed by a motion on October 13 to amend its complaint to include two new claims under the abuse of rights doctrine. By order entered October 17, the district court denied Canterbury's motion to amend as untimely as a matter of law in light of the fact that the action had already been dismissed. The district court subsequently entered an order on October 20 denying Canterbury's motion for reconsideration on the grounds that Canterbury had failed to present any new argument or authority

4

which would persuade the court to vacate its judgment, and that no claim regarding the asserted right of redemption could be established based upon the undisputed facts. Canterbury now brings this appeal.

## Discussion

### I.  Failure to State a Claim

We review a dismissal for failure to state a claim under the same standard as the district court:  a claim may not be dismissed unless it is certain that the defendant cannot prove any set of facts in support of his claim that would entitle him to relief. *Leffall v. Dallas Ind. School Dist.*, 28 F.3d 521, 524 (5th Cir. 1994). We assume the truth of the facts alleged in the complaint, but we do not assume facts that are not alleged.  *McCormack v. National Collegiate Athletic Ass'n*, 845 F.2d 1338, 1343 (5th Cir. 1988).

Under Louisiana law, "[w]hen a litigious right is assigned, the debtor may extinguish his obligation by paying to the assignee the price the assignee paid for the assignment, with interest from the time of the assignment." La. Civ. Code Ann. art. 2652 (Supp. 1996).  "A right is litigious, for that purpose, when it is contested in a suit already filed." *Id; Martin Energy Co. v. Bourne*, 598 So.2d 1160, 1162 (La. App. 1st Cir. 1992).

5

Canterbury challenges the district court's conclusion that no litigious right existed because Canterbury failed to contest the executory proceeding, and therefore Canterbury necessarily lacked any right of redemption under Article 2652. Canterbury's arguments on this point are twofold: (1) the district court's holding rests on an overly mechanistic application of the contestation requirement as no answer is provided for in executory proceedings; and (2) Canterbury was *de facto* contesting the executory proceeding by negotiating the forbearance agreement and continuing to negotiate for the purchase of the note. We address these arguments *seriatim*.

Canterbury's first argument ignores the fact that there are other procedural avenues available to contest an executory proceeding. "[A] right is contested once an answer *or* defense has been filed in response to the petition." *First Nat'l Bank of Jefferson Parish v. Keyworth*, 670 So.2d 1288, 1291 (La. App. 5th Cir. 1996) (emphasis added). While no answer is provided for in executory proceedings, "[d]efenses and procedural objections to an executory proceeding may be asserted either through an injunction proceeding to arrest the seizure and sale . . . or a suspensive appeal from the order directing the issuance of the writ of seizure and sale, or both." La. Code Civ. P. art. 2642. Either of these mechanisms would suffice to constitute a contest within the meaning of Article 2652. *See Keyworth*, 670 So.2d 1291 (petition for

6

temporary restraining order and preliminary injunction contested right to seize and sell property, although holding no sale of litigious right because did not contest until after transfer of note). Canterbury's complaint does not allege that Canterbury sought to file any formal contest to the executory proceeding whatsoever.

Furthermore, Canterbury affirmatively pleaded that it had waived all defenses to foreclosure as partial consideration for the forbearance agreement. Therefore, the complaint reflects that not only did Canterbury fail to contest the executory proceeding, but it could not do so having waived all defenses to the action. Finally, Canterbury does not dispute that the note was due and owing. *See FSLIC v. Mmahat*, 89 B.R. 573, 575 (E.D. La. 1988)(holding that the purchase of a loan did not create a litigious right where the loan is undisputed by the obligor).

With respect to Canterbury's second argument that the negotiation of the forbearance agreement and for the purchase of the note constituted a contest, Canterbury cites no authority to the effect that the Louisiana courts have recognized anything other than a contested *judicial* proceeding as satisfying this requirement.

In short, we agree with the court below that the facts alleged by Canterbury affirmatively demonstrate that no litigious right existed in the present case, and that therefore Canterbury's

7

allegations premised on interference with the right of redemption on sale of a litigious right necessarily fail to state a claim upon which relief can be granted.[1]

## II. Denial of Motion to Amend

Canterbury additionally complains of the district court's denial of its motion to amend its complaint to allege causes of action under the Louisiana abuse of rights doctrine. We find no error in denying the motion to amend. Amendment simply was not available because the district court had dismissed Canterbury's entire action rather than just its complaint.

In *Whitaker v. City of Houston*, 963 F.2d 831 (5th Cir. 1992), we were confronted with facts similar to those in the present case in that the district court had entered an order dismissing the plaintiff's "claims" which we noted gave little indication as to whether the court intended to dismiss the complaint or the entire action. Much turns on this distinction as it governs whether the plaintiff may seek leave to amend under Federal Rule of Civil Procedure 15(a). In *Whitaker,* we held:

> "A district court's order dismissing a complaint constitutes dismissal of the action when it states or clearly indicates that no amendment is possible——e.g.,

---

[1] For instance, Canterbury's claim for conspiracy must fail in the absence of any valid right of redemption under article 2652 because article 2324 of the Louisiana Civil Code does not provide an independent basis for liability, but must be premised upon a wrong which would otherwise give rise to a cause of action. *See, e.g., Magee v. Employers Information Serv., Inc*., 468 So.2d 712, 714 (La. App. 4th Cir. 1985).

8

when the complaint is dismissed with prejudice or with express denial of leave to amend——or when circumstances otherwise indicate that no amendment is possible——e.g., when the limitations period has expired. In any such case, dismissal of the complaint terminates the action even though the district court does not use those precise words, and thus constitutes a final order, subject to the thirty-day appeal limit——assuming, that is, that a Rule 58 judgment was entered, which was not the case here. If, on the other hand, the district court's order does not expressly or by clear implication dismiss the *action*, then under *Czeremcha*, such order merely dismisses the complaint. In that case, the plaintiff may amend under Rule 15(a), but only with permission of the court.

. . . .

As no Rule 58 judgment was entered in this case, we are not directly concerned with the effect of entry of a Rule 58 judgment on the plaintiff's option to file a motion for permissive amendment. Nevertheless, we note that post-*Czeremcha* decisions in the Eleventh Circuit have held that once a Rule 58 judgment is entered amendment of the complaint is no longer possible." *Id.* at 835.

Unlike in *Whitaker*, the court's order dismissing the action in the present case expressly stated that the dismissal was with prejudice, *and* a Rule 58 judgment was entered shortly thereafter. As the district court had dismissed Canterbury's entire action, there was simply nothing left for Canterbury to amend, and therefore Canterbury's only remaining options were a motion to

reconsider the judgment or an appeal of the dismissal.[2]  *See Whitaker*, 963 F.2d at 834.

For the foregoing reasons, the judgment of the district court is hereby

AFFIRMED.

---

[2]    Even if there were something left to amend, the Louisiana abuse of rights doctrine would not have resurrected Canterbury's action as Canterbury's proposed amended complaint still failed to state a cause of action.  "The Louisiana abuse-of-rights doctrine applies only if one of the following conditions is met: (1) The rights were exercised 'exclusively for the purpose of harming another or with the predominant motive to cause harm;' (2) an absence of [sic] 'of a serious and legitimate interest that is worthy of judicial protection;' (3) using 'the right in violation of moral rules, good faith or elementary fairness;' or (4) 'exercising the right for a purpose other than that for which it was granted.'" *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 520 (5th Cir.)(*quoting Illinois Cent. R.R. v. International Harvester Co.*, 368 So.2d 1009 (La. 1979)), *cert. denied*, 115 S.Ct. 573 (1994); *see also Massachusetts Mut. Life Ins. Co. v. Nails*, 549 So.2d  826 (La. 1989).  "The doctrine of abuse of rights has been invoked sparingly in Louisiana.  The doctrine is a civilian concept which is applied only in limited circumstances because its application renders unenforceable one's otherwise judicially protected rights." *Oliver v. Central Bank*, 658 So.2d 1316, 1321 (La. App. 2d Cir. 1995)(internal citations omitted); *see also Dufour v. Westlawn Cemeteries, Inc.*, 639 So.2d 843 (La. App. 5th Cir. 1994).

Canterbury's proposed amended complaint alleged: (1) "Prudential abused the right to assign the Promissory Note because it did so for the predominant motive of causing harm to Canterbury;" and (2) "Prudential and BHNO abused the right to enter into the confidentiality agreement because: (a) the predominant motive for entering into the agreement was to harm Canterbury; (b) there was no legitimate motive for not disclosing the amount paid for the assignment; and (c) the refusal to disclose the amount paid for the assignment was unfair and done in bad faith."

We fail to see how the assignment itself caused any harm to Canterbury in the absence of a valid right of redemption.  As for Canterbury's claim relating to the confidentiality agreement, this act could cause harm to Canterbury only if Canterbury possessed a valid right of redemption which we have already concluded that it did not.

10